1  SULLIVAN HILL LEWIN REZ & ENGEL
   A Professional Law Corporation
2  Shannon D. Sweeney, SBN 204868
   E-mail:  Sweeney@sullivanhill.com
3  515 S. Flower Street, 36th Floor
   Los Angeles, California 90071
4  Telephone:  (619) 233-4100 / Fax Number: (619) 231-4372

5  ENGELMAN BERGER, P.C.
   Scott B. Cohen, SBN 171941
6  E-mail:  sbc@eblawyers.com
   3636 N. Central Ave., Suite 700
7  Phoenix, Arizona 85012
   Telephone: (602)271-9090 / Fax Number: (602)222-4999

8

9  Attorneys for Plaintiff, COMPASS BANK dba BBVA COMPASS

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  COMPASS BANK dba BBVA                 Case No.  2:17-cv-6563
    COMPASS, an Alabama corporation,

14              Plaintiff,                **COMPLAINT FOR RECEIVERSHIP,
                                          JUDICIAL FORECLOSURE,**
15        v.                             **BREACH OF CONTRACT, BREACH
                                          OF GUARANTY, MONEY HAD AND**
16  BARAKA HOLDINGS, LLC, a              **RECEIVED**
    Delaware limited liability company;
17  HTK AUTOMOTIVE U.S.A.,
    CORP., a Delaware corporation; and
18  KARIM BOUMAJDI aka KEVIN
    BOUMAJDI, an individual,
19
                Defendants.
20

21

22        Plaintiff  Compass  Bank  dba  BBVA  Compass  ("Compass"),  an  Alabama

23  corporation, for its Complaint against Defendants Baraka Holdings, LLC, a Delaware

24  limited  liability  company  ("Baraka"),  HTK  Automotive  U.S.A.  Corp.,  a  Delaware

25  corporation  ("HTK"),  and  Karim  Boumajdi  aka  Kevin  Boumajdi  ("Boumajdi"),  hereby

26  alleges as follows:

27  / / /

28  / / /

390194-v1

## <u>OVERVIEW</u>

1.     This is an action for, among other things, appointment of a Receiver, judicial foreclosure, and for breach of contract and guaranties relating to a series of loans (the "Loans") from Compass to Baraka and HTK, which were all executed and guaranteed by Boumajdi.

2.     Defendants are in default under the Loans for, among other things, failing to make timely payments of principal and interest when due on certain of the Loans and breaching certain non-monetary covenants with respect to the Loans, including allowing Compass to inspect its collateral, as required by the Loan documentation.

3.     As a result of the Defendants' default, Compass accelerated the balances of the Loans.

4.     Compass' Loan to Baraka is secured by a recorded, first position deed of trust and assignment of rents on real property commonly known as 5218 Rivergrade Road, Irwindale, California 91706 (the "Real Property"). HTK uses the Real Property in connection with its business of manufacturing automotive electronics and lithium-ion batteries for electrical vehicles. Compass's Loans to HTK are secured by a blanket lien and security interest in all of HTK's personal property, including without limitation all equipment, inventory, goods, accounts, and general intangibles (collectively, the "HTK Collateral").

5.     Under the terms of the deeds of trust and security agreements, Compass is entitled, upon any event of default, to the appointment of a receiver to take possession and control of the Real Property and the HTK Collateral and to protect and preserve it pending its ultimate disposition.

6.     Compass has made attempts to obtain resolution of, or assurances about, Defendants' default, but Defendants have refused to cooperate, including failing to cure their monetary defaults, failing to provide financial documentation they are required by the Loan documents to provide, and substantially delaying Compass's inspection of its collateral. As such, Compass' collateral is at immediate risk of being

1   dissipated.

2     7.  Thus, it is imperative that a Receiver be appointed to take over

3   management and control of the Real Property and the HTK Collateral to ensure that it

4   is properly preserved and maintained pending ultimate disposition of the matter.

5

6   **PARTIES, JURISDICTION AND VENUE**

7     8.  Compass is an Alabama corporation with its principal place of business

8   in Birmingham, Alabama.

9     9.  HTK is a Delaware corporation with its principal place of business

10  located in 5218 Rivergrade Road, Irwindale, California 91706. HTK entered into

11  contracts and caused actions and events to occur in Los Angeles County, California out

12  of which this action arises.

13    10.  Baraka is a Delaware limited liability company with its principal place of

14  business located in 5218 Rivergrade Road, Irwindale, California 91706. Baraka entered

15  into contracts and caused actions and events to occur in Los Angeles County,

16  California out of which this action arises.

17    11.  Upon information and belief, Boumajdi was the CEO and President of

18  HTK, and the sole member and manager of Baraka at all relevant times herein.

19    12.  Upon information and belief, Boumajdi is a citizen of and domiciled in

20  Los Angeles County, California.

21    13.  This Court has subject matter jurisdiction of this action pursuant to 28

22  U.S.C. § 1332 as complete diversity exists among the parties and the amount in

23  controversy exceeds $75,000, exclusive of interest and costs.

24    14.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2)

25  in that a substantial part of the events or omissions giving rise to the claim occurred at

26  the Real Property, which is the companies' listed principal place of business and

27  Boumajdi's listed address of record.  In addition, the Real Property, which is the

28  subject of the Real Estate Loan, is situated in this venue.  Defendants agreed to this

Court's jurisdiction, and Compass' choice of venue, in the applicable loan documents.

15.     The applicable loan documents mandate that federal law and the laws of the state of California shall govern this dispute.

## GENERAL ALLEGATIONS

**I.   DEFENDANTS EXECUTED THE LOAN AND SECURITY DOCUMENTS.**

### A.   The First HTK Line of Credit (Loan No. #32-10008250-26)

16.     On or about March 30, 2016, Compass entered into a *Business Loan Agreement* (the "First HTK Line of Credit Agreement") with HTK, pursuant to which Compass agreed to make a non-revolving line of credit available to HTK in the original principal amount of $2,000,000 (the "First HTK Line of Credit").

17.     HTK's obligations with respect to the repayment of the First HTK Line of Credit are further governed by the promissory note of the same date in the original principal amount of $2,000,000 executed by HTK (the "First HTK Line of Credit Note").

18.     Pursuant to the *Commercial Security Agreement*, also dated March 30, 2016 (the "First HTK Line of Credit Security Agreement") and entered by HTK as debtor, the First HTK Line of Credit Note is secured by a blanket lien on all of HTK's assets, including without limitation all accounts, inventory, equipment, general intangibles, goods, instruments, and deposit accounts (collectively, the "HTK Collateral").

19.     Compass' lien on the HTK Collateral was perfected by the filing of a UCC-1 financing statement in the Office of the Delaware Department of State on April 5, 2016 at Instrument No. 2016-2012639 (the "HTK Financing Statement").

20.     Pursuant to the *Agreement to Provide Insurance* dated March 30, 2016, HTK agreed to keep the HTK Collateral insured with the coverage described in said agreement.

21.     On or about March 30, 2016, Boumajdi executed a Guaranty (the "First HTK Guaranty") pursuant to which he absolutely and unconditionally guaranteed payment of all of HTK's indebtedness and obligations to Compass.

22.     On or about October 29, 2016, Compass and HTK entered into a *Change In Terms Agreement* (the "First HTK Line of Credit CIT")*,* whereby the First HTK Line of Credit Note was modified to change the interest rate from a 6 month LIBOR rate to a 1 month LIBOR rate.

23.     The First HTK Line of Credit Agreement, the First HTK Line of Credit Note, the First HTK Line of Credit Security Agreement, the First HTK Line of Credit CIT, the First HTK Guaranty, and the Agreement to Provide Insurance are referred to collectively herein as the "First HTK Line of Credit Documents."

**B.     The Second HTK Line of Credit (Loan No. #32-10008250 -42)**

24.     On or about March 6, 2017, Compass made a non-revolving line of credit available to HTK in the original principal amount of $1,600,000 (the "Second HTK Line of Credit").

25.     HTK's obligations with respect to the repayment of the Second HTK Line of Credit are further governed by the promissory note of the same date in the original principal amount of $1,600,000 executed by HTK (the "Second HTK Line of Credit Note").

26.     Pursuant to the Commercial Security Agreement also dated March 6, 2017 (the "Second HTK Line of Credit Security Agreement") and executed by HTK as debtor, the Second HTK Line of Credit Note is secured by a blanket lien on the HTK Collateral.

27.     Compass' lien on the HTK Collateral was perfected by the filing of the HTK Financing Statement.

28.     Pursuant to the Agreement to Provide Insurance dated March 6, 2017, HTK agreed to keep the HTK Collateral insured with the coverage described in said agreement.

29.     On or about March 6, 2017, Boumajdi executed a Guaranty (the "Second HTK Guaranty") pursuant to which he absolutely and unconditionally guaranteed payment of all of HTK's indebtedness and obligations to Compass.

30.     The Second HTK Line of Credit Note, the Second HTK Line of Credit Security Agreement, the Second HTK Guaranty, and the Agreement to Provide Insurance are referred to collectively herein as the "Second HTK Line of Credit Documents."

### C.     Real Estate Loan (Loan No. #32-10008607-18)

31.     On or about September 1, 2016, Compass entered into a *Business Loan Agreement* (the "Real Estate Loan Agreement") with Baraka, pursuant to which Compass agreed to make a loan to Baraka in the original principal amount of $2,420,000 (the "Real Estate Loan").

32.     Baraka's obligations with respect to the repayment of the Real Estate Loan are further governed by the promissory note of the same date in the original principal amount of $2,420,000 executed by Baraka (the "Real Estate Note").

33.     The Real Estate Note is secured by a *Deed of Trust* and an *Assignment of Rents* on the Real Property.

34.     The Deed of Trust was recorded in the Office of the Los Angeles County Recorder on September 19, 2016 at Instrument No. 20161134246.

35.     The Assignment of Rents was recorded in the Office of the Los Angeles County Recorder on September 19, 2016 at Instrument No. 20161134247.

36.     Pursuant to the *Agreement to Provide Insurance* dated September 1, 2016, Baraka agreed to keep the Real Property insured with the coverage described in said agreement.

37.     On or about September 1, 2016, Boumajdi and HTK each executed a *Commercial Guaranty* (collectively, the "Baraka Guarantees") pursuant to which they absolutely and unconditionally guaranteed payment of all of Baraka's indebtedness and obligations to Compass.

38.     The Real Estate Loan Agreement, the Real Estate Note, the Deed of Trust, the Assignment of Rents, the Agreement to Provide Insurance, and the Baraka Guarantees are referred to collectively herein as the "Real Estate Loan Documents."

**D.     The Credit Card Agreement (Account # 5563-6580-0001-4947, Account #5563-6580-0001-4939, and  Account # 5563-6580-0001-0155)**

39.     On or about March 16, 2016, HTK executed the "BBVA Compass Commercial Card Agreement" (the "Credit Card Agreement").

40.     As a card-issuing member of MasterCard and Visa, Compass issued card(s) ("Commercial Cards"), which were used by HTK as provided in the Credit Card Agreement. More particularly, HTK requested and Compass agreed to provide, for use by individuals designated by HTK, an account (the "Commercial Card Account"), which was used to purchase goods and services from those merchants that accept MasterCard and/or Visa as a method of payment.

## II.     DEFENDANTS DEFAULTED ON THE LOANS AND GUARANTIES.

41.     Defendants defaulted under the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, and the Credit Card Agreement as a result of the actions and omissions set forth herein.

**A.     First HTK Line of Credit Documents**

42.     HTK and Boumajdi failed to timely make the monthly payments due under the First HTK Line of Credit Documents on May 1, 2017, June 1, 2017, and July 1, 2017.

43.     HTK failed to provide CPA reviewed year-end financial statements for fiscal year ending February 28, 2017 within 90 days of end of fiscal year;

44.     HTK failed to timely provide copies of its 2014 and 2015 state tax returns and 2016 federal and state tax returns and/or extensions within 30 days of applicable filing date;

/ / /

45.     Boumajdi failed to provide his 2015 state tax returns and 2016 federal and tax returns and/or extensions within 30 days of applicable filing date;

46.     The First HTK Line of Credit Documents are cross-collateralized and cross-defaulted with all other debts and obligations of HTK to the Bank. HTK's defaults with respect to the Second HTK Line of Credit Documents, the Credit Card Agreement, the First HTK Swap Documents, the Second HTK Swap Documents, and HTK's guaranty of the Real Estate Loan Documents also constitute events of default under the First HTK Line of Credit Documents.

**B.     Second HTK Line of Credit Documents**

47.     HTK and Boumajdi failed to timely make the monthly payments due under the Second HTK Line of Credit Documents due on April 28, 2017, May 28, 2017, June 28, 2017, and July 28, 2017.

48.     HTK failed to provide CPA reviewed year-end financial statements for fiscal year ending February 28, 2017 within 90 days of end of fiscal year;

49.     HTK failed to timely provide copies of its 2014 and 2015 state tax returns and 2016 federal and state tax returns and/or extensions within 30 days of applicable filing date;

50.     Boumajdi failed to provide his 2015 state tax returns and 2016 federal and tax returns and/or extensions within 30 days of applicable filing date;

51.     The Second HTK Line of Credit Documents are cross-collateralized and cross-defaulted with all other debts and obligations of HTK to Compass. HTK's defaults with respect to the First HTK Line of Credit Documents, as identified herein, also constitute events of default under the Second HTK Line of Credit Documents.

**C.     The Real Estate Loan**

52.     Baraka failed to make the payments due on June 1, 2017, July 1, 2017, and August 1, 2017.

53.     HTK failed to provide CPA reviewed year-end financial statements for fiscal year ending February 28, 2017 within 90 days of end of fiscal year;

54.     HTK failed to timely provide copies of 2014 and 2015 state tax returns and 2016 federal and state tax returns and/or extensions within 30 days of applicable filing date;

55.     Boumajdi failed to provide copies of his 2015 state tax returns and 2016 federal and tax returns and/or extensions within 30 days of applicable filing date;

56.     HTK failed to provide Compliance Certificate for first quarter of 2017 executed by HTK's CFO or other officer acceptable to Bank, certifying that all representations and warranties are true and correct as of the date of the certificate and no event of default exists.

57.     HTK failed to provide documentation demonstrating that it is maintaining a minimum Fixed Charge Coverage Ratio (FCCR) of 1.25 to 1.00, evaluated quarterly, as of first fiscal quarter of 2017.

58.     HTK failed to provide documentation demonstrating that it is maintaining a minimum Leverage Ratio of 2.75 to 1.00, as of first fiscal quarter of 2017.

59.     Baraka failed to keep real estate taxes current. According to the LA County Assessor, Baraka owes $314 as of 3/31/17 and another $285 due 7/31/17. Even assuming prior supplemental taxes are owed solely by the prior owner of the real property and do not constitute a lien on the property, Baraka is responsible for clearing this up with the LA County Assessor and getting those fees removed from the property and/or Baraka's name. Defendants have not provided any documentation indicating this has been resolved.

### D.     The Credit Card Agreement

60.     The Credit Card Agreement is cross-collateralized and cross-defaulted with all other debts and obligations of HTK to Compass. HTK's defaults with respect to the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, as identified herein, also constitute events of default under the Credit Card Agreement.

### III.    DEFENDANTS FAILED TO PAY THE ACCELERATED BALANCES OF THE LOANS.

61.    On June 1, 2017, as a result of the foregoing defaults, Compass gave notice to Defendants that it accelerated payment of all of the Loans, and that the entire outstanding balances of the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, and the Credit Card Agreement are immediately due and payable. Notice was made via Certified and United States mail to the Real Property address, which is the address that Defendants informed Compass was their proper and accurate address in every written communication and contract between the parties.

62.    On July 19, 2017, as a result of Defendants' failure to cure the foregoing defaults and the occurrence of additional events of default, Compass gave a second notice to Defendants that the Loans remained in default, and that Compass demanded payment of the entire outstanding balances of the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, and the Credit Card Agreement. Notice was made via mail and email to Defendants' legal counsel David Hirsch.

63.    Defendants have failed to pay the outstanding balances of the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, or the Credit Card Agreement.

64.    As of July 10, 2017 the outstanding balances due with respect to each of the Loans were as follows:

| CREDIT FACILITY | TOTAL DUE | PRINCIPAL | INTEREST | LATE FEES | LEGAL FEES & COSTS | PER DIEM |
|---|---|---|---|---|---|---|
| First HTK Line of Credit | $2,024,372.71 | $ 2,000,000.00 | $21,780.97 | $2,591.74 | | $234.65444 |
| Second HTK Line of Credit | $1,622,048.53 | $1,600,000.00 | $19,227.95 | $2,820.58 | | $187.86178 |
| Real Estate | $2,427,822.56 | $2,393,081.16 | $0.00 | $717.24 | $34,024.16 | $261.05989 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Loan | | | | | | |
| Credit Card Agreement (Basic) | $321,963.61 | --- | --- | --- | --- | --- |
| Credit Card Agreement (World Elite) | $69,074.84 | --- | --- | --- | --- | --- |
| **TOTAL** | $6,465,282.25 | $5,993,081.16 | $41,008.92 | $6,129.56 | $34,024.16 | $683.58 |

65.     The total due for the Real Estate Loan in the above table reflects a credit of $35,042.58 for the voluntary early termination (at Baraka's request) of an interest rate swap agreement between Baraka and Compass. Pursuant to Boumajdi's direction to apply the credit to the Real Estate Loan in accordance with the terms of the Real Estate Loan Documents, the payoff figures set forth above reflect the application of the credit first to accrued interest, then to unpaid collection costs and other charges. The attorneys' fees and costs listed above were determined as of June 30, 2017. Baraka is liable for, among other things, all attorneys' fees and costs incurred by Compass after that date.

66.     This matter arises out of contract and Compass is entitled to an award of its costs and attorneys' fees incurred herein pursuant to the terms of the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, and the Credit Card Agreement, each of which expressly authorizes such award.

## CLAIMS
### COUNT ONE
### Appointment Of Receiver
### (Against All Defendants)

67.     Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

68.     Defendants are in default under the terms of the First HTK Line of Credit Documents, the Second HTK Line of Credit Documents, the Real Estate Loan Documents, and the Credit Card Agreement.

69.     Further, Compass has made attempts to obtain resolution of, or assurances about, Defendants' default, and Defendants have refused to cooperate, including failing to make payments when due, failing to provide the financial information required by the terms of the loan documents, and repeatedly delaying Compass's inspection of its collateral. As such, Compass' collateral is at immediate risk of being dissipated.

70.     A receiver is necessary to enforce, protect and preserve Compass' interest in the HTK Collateral, the Real Property, and its entitlement to rents under the Real Estate Loan.

71.     Moreover, the First HTK Line of Credit Security Agreement and Second HTK Line of Credit Security Agreement each provide that, in addition to other remedies, Compass shall be entitled to the appointment of a receiver over the HTK Collateral upon the occurrence of an event of default. Specifically, they state:

> **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

72.     In addition, the Deed of Trust provides that, in addition to other remedies, Compass shall be entitled to the appointment of a receiver over the Real Property upon

the occurrence of an event of default under the Real Estate Loan Documents. Specifically, the Deed of Trust states:

> **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

73.     Compass is entitled to and requests that the Court restrain the Defendants from causing further waste, theft and/or vandalism on the HTK Collateral and the Real Property, and from removing, secreting or otherwise disposing of the HTK Collateral or the Real Property to the injury of Compass, pending hearing on the application for appointment of a receiver.

## COUNT TWO
### Judicial Foreclosure
### (Against All Defendants)

74.     Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

75.     Baraka is the record owner of the Real Property.  Baraka, as the borrower under the Real Estate Loan, and HTK and Boumajdi, as guarantors under the Baraka Guarantees, are jointly and severally liable for all amounts due and outstanding under the Real Estate Loan.

76.     Compass has an interest in the Real Property under the Deed of Trust to secure Baraka's payment and performance of its obligations under the Real Estate Loan.

77. The Real Estate Loan expressly provides, and Baraka has agreed, that its failure to pay or perform its obligations thereunder constitutes an event of default, and Compass is entitled to resort to any and all collateral securing the Real Estate Loan including, without limitation, foreclosing on the Deed of Trust on the Real Property.

78. Compass has performed all of its obligations under the Real Estate Loan.

79. The facts alleged above constitute events of default.

80. As a result of the foregoing defaults, Compass seeks a judgment from this Court judicially foreclosing upon the Real Property under Code of Civil Procedure section 726 and under the Real Estate Loan.

81. Compass seeks a judgment declaring Defendants liable for any deficiency that may result in the event that the proceeds from the sale of the Real Property are insufficient to satisfy Defendants' obligations under the obligations secured by the Deed of Trust for principal, interest, late charges, attorneys' fees and costs, and otherwise.

82. Compass may be required to expend additional sums to protect its security in the Real Property, which sums Baraka has contractually agreed to pay. Compass asks leave to amend this Complaint to allege the nature and amounts of such sums it is required to make as such additional expenditures.

83. Compass is also entitled to have its interests in the Real Property declared superior to any and all interests of the Defendants, and to have the judgment foreclose out all right, title and interest of Defendants in and to the Real Property and to have the Real Property sold free and clear of such interests.

## COUNT THREE
### Turn Over of Personal Property Collateral
### (Against HTK)

84. Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

85.     Under the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, Compass has a continuing security interest in the HTK Collateral to secure the indebtedness owed by HTK to Compass.

86.     Compass is a secured creditor under of the California Commercial Code by virtue of the First HTK Line of Credit Security Agreement and Second HTK Line of Credit Security Agreements.

87.     Compass perfected its security interest in the HTK Collateral by the filing of a UCC-1 financing statement in the Office of the Delaware Department of State.

88.     Notwithstanding Compass' demands, HTK has breached the First HTK Line of Credit Documents and the Second HTK Line.

89.     As a result of HTK's default under the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, Compass is entitled to and hereby seeks judgment: (a) directing HTK to turnover possession of the HTK Collateral to Compass or the Receiver, (b) authorizing Compass or the Receiver to dispose of the HTK Collateral, (d) authorizing Compass or the Receiver to apply the proceeds of such disposition to HTK's debts to Compass, and (e) for any remaining deficiency against HTK.

## COUNT FOUR

### Breach of Contract: First HTK Line of Credit Documents and Second HTK Line of Credit Documents

### (Against HTK)

90.     Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

91.     HTK's actions as set forth above constitute material breaches of the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, both of which are valid and enforceable contracts.

92.     Compass has fulfilled all of its obligations and any conditions precedent to Defendants under the First and Second HTK Line of Credit Documents.

93.     As a result of said breaches, Compass has incurred damages in an amount to be proven at trial, to the extent there is a deficiency, on the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, following judicial foreclosure on The Real Property.

94.     Compass is entitled to its costs, attorneys' fees, and expenses expended in prosecuting this action pursuant to the express terms of the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents.

## COUNT FIVE
### Breach of Contract: Real Estate Loan Documents
### (Against Baraka)

95.     Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

96.     Compass has fulfilled all of its obligations and any conditions precedent to Defendants under the Real Estate Loan Documents.

97.     Baraka's actions, as set forth above, constitute material breaches of the Real Estate Loan Documents, which are valid and enforceable contracts.

98.     As a result of said breaches, Compass has incurred damages in an amount to be proven at trial, to the extent there is a deficiency remaining following judicial foreclosure on The Real Property.

99.     Compass is entitled to its costs, attorneys' fees, and expenses expended in prosecuting this action pursuant to the express terms of the Real Estate Loan Documents.

## COUNT SIX
### Breach of Guaranty of HTK Debts
### (Against Boumajdi)

100.     Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

101.    Pursuant to the First HTK Guaranty and the Second HTK Guaranty (collectively, the "HTK Guarantees"), Boumajdi unconditionally guaranteed all indebtedness owed by HTK to Compass.

102.    Boumajdi's actions, as set forth above, constitute material breaches of the HTK Guarantees.

103.    As a result of said breaches, to the extent there is a deficiency following foreclosure, Compass has incurred damages in an amount to be proven at trial, but in no event less than the amounts specified above with respect to the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents.

104.    As a result of said breaches, Compass also has incurred attorneys' fees, costs and expenses to enforce the HTK Guarantees.

105.    Compass is entitled to its costs, attorneys' fees and expenses expended in prosecuting this action pursuant to the express terms of the HTK Guarantees.

## COUNT SEVEN
### Breach of Guaranty of Baraka Debts
### (Against Boumajdi and HTK)

106.    Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

107.    Pursuant to the Baraka Guarantees, Boumajdi and HTK unconditionally guaranteed all indebtedness owed by Baraka to Compass.

108.    The actions of Boumajdi and HTK constitute material breaches of the Baraka Guarantees.

109.    As a result of said breaches, to the extent there is a deficiency following foreclosure, Compass has incurred damages in an amount to be proven at trial, but in no event less than the amounts specified above with respect to the Real Estate Loan Documents.

110.    As a result of said breaches, Compass also has incurred attorneys' fees, costs and expenses to enforce the Baraka Guarantees.

111.    Compass is entitled to its costs, attorneys' fees and expenses expended in prosecuting this action pursuant to the express terms of the Baraka Guarantees.

### COUNT EIGHT
### Money Had and Received
### (Against All Defendants)

112.    Compass hereby realleges the allegations set forth in the preceding paragraphs and incorporates them as if fully set forth herein.

113.    On or about all the dates set forth above, but specifically on March 16, 2016, March 30, 2016, September 1, 2016, October 29, 2016 and March 6, 2017, Defendants became indebted to Compass in, at a minimum, the amounts set forth above, for money lent by Compass to them, and each of them, at their insistence and request.

114.    The loaned sum has not been repaid, although payment has been demanded, leaving the balance due, owing and unpaid to Compass in the amounts set forth above, plus late charges, other fees specified above, pre- and post-judgment interest at the legal rate from and after the dates of the loans, and costs, attorneys' fees and expenses expended in prosecuting this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Compass prays for judgment against Defendants as follows:

**As to Count One:**

A.    For the entry of an Order, pending a hearing on the application for appointment of a receiver, restraining Defendants from causing waste, theft, or vandalism on the HTK Collateral or the Real Property and/or from removing, secreting or otherwise disposing of the HTK Collateral or the Real Property to the injury of Compass;

B.    For a Receiver to be appointed to take possession, custody, and control of the HTK Collateral and the Real Property, including rents;

C.     For an Order decreeing that Defendants and their trustees, officers, directors, agents, representatives, shareholders, and employees, and all other persons with actual or constructive knowledge of said Order and their agents and employees, except Compass, shall take such actions and turn over documents to the Receiver in accordance with the provisions set forth hereinabove and incorporated by reference herein;

D.     For specific performance of security provisions of the Real Estate Note, including the Assignment of Rents on the Real Property; and

E.     For such other and further relief and the Court may deem just and proper.

**As to Count Two:**

A.     For judgment against Defendants for the delinquent amounts owing on the Real Estate Loan, plus interest as therein provided, and all fees and penalties contained therein, at the rates and manner set forth in the Real Estate Loan, plus such additional sums, if any, that Compass may expend to protect its security interest in the liens under the Real Estate Loan, together with lawful interest according to proof;

B.     That the Court adjudge Compass' Deed of Trust on the Real Property to be superior to the interests of any and all Defendants who claim an interest therein and that the Real Property be foreclosed and sold free and clear of the interest if the interest of all Defendants who claim an interest therein, and that judgment be made for sale of the Real Property thereby, according to law and the custom of this Court, by the Sheriff or Marshal of the County of Los Angeles, that the proceeds of the sale be applied first in payment of the amounts due to Compass under the Real Property Deed of Trust, that Defendants and all persons claiming under them, or any of them, subsequent to the execution of the Real Property Deed of Trust, either as lien claimants, judgment creditors, lessees, claimants under a junior security agreement, purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights, claims, interest or equity of redemption in the property affected by the Real Property Deed of Trust, when time for redemption, if any, has lapsed;

C.     That the Court award Compass judgment and execution against Defendants for any deficiency that may remain after applying all proceeds of the sale of the Real Property duly applicable to satisfy the amounts due to Compass;

D.     Costs of suit and reasonable attorneys' fees; and

E.     For such other and further relief as the Court may deem just and proper under the circumstances

**As to Count Three:**

A.     For immediate possession of the Collateral;

B.     For an order allowing disposition of the Collateral (by Compass or the Receiver) and application of the proceeds to HTK's underlying obligations to Compass;

C.     For entry of judgment in an amount of any deficiency;

D.     For an award of Compass' costs and reasonable attorneys' fees; and

E.     For such other and further relief as the Court may deem just and proper under the circumstances.

**As to Count Four:**

A.     For a judgment in the amount of any deficiency remaining following foreclosure of the Real Property related to the outstanding balances due under the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, including late charges, other contractual fees, pre- and post-judgment interest at the amounts set forth in such documents;

B.     For an award of Compass' costs and reasonable attorneys' fees incurred in obtaining a Receiver and for enforcing other rights under the Loans and Guarantees, pursuant to the terms and conditions of said agreements; and

C.     For such other and further relief as the Court may deem just and proper under the circumstances.

/ / /

/ / /

**As to Count Five:**

A.     For a judgment in the amount of any deficiency remaining following foreclosure of the Real Property related to the outstanding balances due under the Real Estate Loan Documents, including late charges, other contractual fees, pre- and post-judgment interest at the amounts set forth in such documents;

B.     For an award of Compass' costs and reasonable attorneys' fees incurred in obtaining a Receiver and for enforcing other rights under the Loans and Guarantees, pursuant to the terms and conditions of said agreements; and

C.     For such other and further relief as the Court may deem just and proper under the circumstances.

**As to Count Six:**

A.     For a judgment in the amount of any deficiency remaining following foreclosure of the Real Property related to the principal amounts of the First HTK Line of Credit Documents and the Second HTK Line of Credit Documents, including late charges, other contractual fees, pre- and post-judgment interest at the amounts set forth in such documents;

B.     For an award of Compass' costs and reasonable attorneys' fees incurred in obtaining a Receiver and for enforcing other rights under the Loans and Guarantees, pursuant to the terms and conditions of said agreements; and

C.     For such other and further relief as the Court may deem just and proper under the circumstances.

**As to Count Seven:**

A.     For a judgment in the amount of any deficiency remaining following foreclosure of the Real Property related to the principal amounts of the Real Estate Loan Documents, including late charges, other contractual fees, pre- and post-judgment interest at the amounts set forth in such documents;

/ / /

/ / /

B.      For an award of Compass' costs and reasonable attorneys' fees incurred in obtaining a Receiver and for enforcing other rights under the Loans and Guarantees, pursuant to the terms and conditions of said agreements; and

C.      For such other and further relief as the Court may deem just and proper under the circumstances.

**As to Count Eight:**

A.      For a judgment in the amount of any deficiency remaining following foreclosure of the Real Property related to the loaned amounts, plus late charges and other fees specified above;

B.      For pre- and post-judgment interest at the legal rate from and after the dates of the loans;

C.      For an award of Compass' costs and reasonable attorneys' fees and expenses expended in prosecuting this action; and

D.      For such other and further relief as the Court deems just and appropriate under the circumstances.

Dated:      September 6, 2017          SULLIVAN HILL LEWIN REZ & ENGEL
                                       A Professional Law Corporation


                                       By:      _____/s/ Shannon D. Sweeney_____
                                                Shannon D. Sweeney

                                       AND

                                       ENGELMAN BERGER, P.C.


                                       By:      _____/s/ Scott B. Cohen_____
                                                Scott B. Cohen
                                                Attorneys for Compass Bank